IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHARVETTE WILLIAMS, | ) |
| Plaintiff, | ) 8:09CV201 |
| v. | ) |
| COUNTY OF DAKOTA, NEBRASKA, and RODNEY HERRON, in his official capacity and personally, | ) MEMORANDUM AND ORDER |
| Defendants. | ) |

This matter is before the court on the plaintiff's motion for attorney fees, Filing No. 72.[1] This is an action for discrimination in employment under the Title VII, 42 U.S.C. § 2000e, (Count I); the Civil Rights Act, 42 U.S.C. § 1983 (Counts II and III), and the Equal Pay Act, 29 U.S.C. § 2006(d)(1) (Count IV).

In her amended complaint, the plaintiff, an African-American woman, alleges race and gender discrimination.[2] Pursuant to an offer of judgment by the defendants and the plaintiff's acceptance thereof, the parties settled the claims involving equal pay asserted in Counts I and IV of the plaintiff's amended complaint. In Count I she alleged discrimination with respect to the terms and conditions of her employment including pay

---

[1]Defendants also move to strike the plaintiff's reply brief and index, asserting that the submissions do not comply with Fed. R. Civ. P. 54(d)(2)(A) and the local rules. Filing No. 79. Alternatively, defendants seek leave to respond to the submissions. *Id.* The plaintiff has filed an objection thereto. Filing No. 81. The court finds that the issues are sufficiently developed for the court to rule on the fee application and no additional submissions are necessary. There has been no showing of prejudice as a result of the plaintiff's ostensible noncompliance with the rules. Under the circumstances, the court will consider the plaintiff's submissions and defendants' motion to strike will be denied. The plaintiff's objection is rendered moot by this determination.

[2]This action is one of four cases with twelve plaintiffs that involve allegation of widespread sexual misconduct and discrimination at the Dakota County Jail. *See Duncan v. County of Dakota*, 8:09CV277, *Crutcher Sanchez v. County of Dakota*, 8:09CV288, or *Criss v. County of Dakota*, 8:09CV387.

on the basis of her gender and race, and in Count IV she alleged the defendants paid males of equal skill, effort and responsibility more than her on the basis of gender. The parties agreed to settle the claims for a monetary settlement for back pay in the amount of $2,439.20 "plus interest to the date of this offer and those reasonable costs taxable and allowed, including attorneys fees, with respect to Counts I and IV of the Second Amended Complaint."[3] See Filing Nos. 69, Offer of Judgment, Filing No. 70, Acceptance. The court entered judgment in favor of the plaintiff and against defendants in the agreed amount and also for the plaintiff's "reasonable costs taxable and allowed, including attorneys fees with respect to Counts I and IV of the Second Amended Complaint." Filing No. 71.

The plaintiff seeks attorney fees in the amount of $30,940, representing 88 hours of work at the rate of $350 per hour. See Filing No. 72, Ex. A, Affidavit of Dewey P. Sloan, Jr.; Ex. B, Invoice. In support of his motion and in opposition to the defendants' motion to strike, plaintiff has submitted an affidavit and invoice and other documentation of fees and hourly rates. See id.; Filing No. 76, Reply Brief, Ex. 3, Second Affidavit of Dewey P. Sloan; Ex. 3A, Affidavit of Dan Hand; Ex. 3B, Affidavit of W.E. (Gene) Collins; Ex. 3C, Affidavit of Elizabeth A. Rosenbaum. In his affidavits, the plaintiff's counsel states he has 22 years of experience and has litigated major cases. Filing No. 72, Ex. A; Filing No. 76, Ex. 3. He practices throughout the Midwest and has also submitted affidavits from his commercial clients attesting that they pay him $300 an hour, as well as affidavits from LeMars, Iowa, area attorneys stating that $200 to $225 an hour is the reasonable hourly rate for routine, uncomplicated legal matters in that community and that $350 per hour for complex

---

[3]Resolution of the equal pay issues also necessarily included front pay since there is no evidence that the plaintiff is no longer employed at the Dakota County Jail.

litigation is reasonable. Filing No. 72, Ex. A; Filing No. 76, Exs. 3, 3A, 3B, and 3C. Plaintiff's counsel further contends that the issues are interrelated. Filing No. 76, Reply Brief at 19. Defendants oppose the motion, contending that the fees sought are excessive. They argue that plaintiff's counsel's hourly rate is too high and that work performed on the plaintiff's other claims should be deducted form the award. Defendants also argue that the plaintiff should not recover fees for work performed at the administrative level. Defendants submit that an award of fees for 7 hours at $150 an hour would be appropriate.

Under 42 U.S.C. § 2000e-5(k), the prevailing party in a Title VII action is entitled to a reasonable attorney fee. *Bobbitt v. Paramount Cap Mfg. Co.*, 942 F.2d 512, 514 (8th Cir. 1991). In providing for attorney fee awards in civil rights cases, "Congress intended to 'promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators.'" *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001) (quoting *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir.1993)).

Work done by an attorney "in connection with administrative proceedings is compensable under § 2000e-5(k) if the work product from the administrative proceedings is 'both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement.'" *Bobbitt*, 942 F.2d at 514 (quoting *Webb v. Dyer County Board of Education*, 471 U.S. 234, 243 (1985)). In the Eighth Circuit, "fees may be recovered for 'research or investigation done in connection with' a related proceeding, to the extent it 'prove[s] directly relevant to the successful prosecution of the later civil rights' action." *Bobbitt,* 942 F.2d at 514 (quoting *McDonald v. Armontrout*, 860 F.2d 1456, 1462 (8th Cir. 1988)).

The ordinary starting point for a fee award is multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (holding that a prevailing plaintiff may recover an attorney fee for legal services on unsuccessful claims in some instances). Where a plaintiff has achieved only limited or partial success, the court must consider in its award "whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.* at 436. When a plaintiff has prevailed on some claims but not on others, the plaintiff may be compensated for time spent on unsuccessful claims that were related to his successful claims, but not for time spent on unsuccessful claims that were "distinct in all respects from his successful claims." *Id.* at 440. Claims are related, and hence deserving of compensation, if they "involve a common core of facts" or are "based on related legal theories." *Id.* at 435; *see also Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir.1997) (en banc) (stating that "[i]f the plaintiff has won excellent results, he [or she] is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he [or she] did not win," but if the plaintiff's success is limited, he is entitled only to fees that are reasonable in relation to the results obtained).

Cases that "involve a common core of facts or will be based on related legal theories" cannot be viewed as a series of discrete claims. *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773-74 (8th Cir. 2000) (quoting *Hensley*, 461 U.S. at 435); *see also Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir.1991) ( stating that "[a] fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit"). There is no precise rule or formula for making these determinations. *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000). Moreover, "'[b]ecause damages

awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief.'" *Id.* (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). Further, a fee award in an employment discrimination case serves not only "to vindicate important personal rights as envisioned by [Title VII and the Equal Pay Act], but also further the public's interest in providing a fair playing field in the work world." *Shrader v. OMC Aluminum Boat Group, Inc.,* 128 F.3d 1218, 1222 (8th Cir. 1997) (holding that the district court did not abuse its discretion in permitting an over $44,000 attorney fee award in an ADA case where plaintiff was rehired and obtained a $3,000 judgment against employer).

Although an award of attorney fees is not appropriate "where there is no judicially sanctioned change in the legal relationship of the parties," a plaintiff qualifies as a "prevailing party," when she obtains "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). The essential test requires the plaintiff to achieve a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res.,* 532 U.S. 598, 604-05 (2001) (noting that enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship between the parties necessary to permit an award of fees). A district court approval of a private settlement along with explicit retention of jurisdiction to enforce the settlement terms makes a settlement the functional equivalent of a consent decree, providing the necessary judicial imprimatur on the change in conduct. *Id.* at 604 n.7.

5

The court finds that Williams is a prevailing party on the equal pay claims. The claims were resolved through the court mechanisms that entails judicial approval and oversight and have the necessary judicial imprimatur to confer prevailing party status. The defendants invoked the mechanism under Fed. R. Civ. P. 68 and explicitly included fees as a component of the settlement.

Williams has achieved a significant degree of success at this point in the litigation; she has obtained all the relief she sought on the claims relating to her rate of pay. In the context of employment discrimination litigation, an award of back pay and front pay is a successful result. Further, the court finds that the claims of unequal pay are related to the plaintiff's other claims. All of the claims share a common core of facts that arise from the defendants' discrimination against and sexual harassment of the plaintiff and the defendants' conduct toward the plaintiffs in other cases that involve the same defendants and similar conduct may be relevant to the plaintiff's case. Williams has succeeded on claims that are at the heart of the case and has obtained the equivalent of injunctive relief on the pay issue because her rate of pay was increased prospectively. The court further finds that the hours expended to exhaust administrative remedies, a prerequisite to suit, are both useful and of a type ordinarily necessary to advance the litigation and thus compensable.

Importantly, the court notes that the defendants undertook to settle the claims without imposing any limitation on the amount. The court is familiar with the course of this litigation and the other cases that involve the same facts and the same attorneys. A substantial portion of the fees were generated in response to the defendants' aggressive litigation strategy. This case has been pending since June 2009, and the plaintiff's claims

have survived several motions to dismiss. There are over eighty filings in this case, the defendants have filed numerous motions and have aggressively litigated at the motion to dismiss stage. Surely the defendants were aware that their litigation strategy generated legal work, billing and fees. The defendants have not shown that there is a reason they should not be held to their bargain. In making their unrestricted confession of judgment offer, the defendants exposed themselves to the possibility of a large award of fees, especially in view of the contentious history of this case. Defendants cannot be heard to complain of fees engendered by their conduct.

The defendants have not shown that they should not be held to their bargain. Because the plaintiff's claims are related, a failure to succeed on her remaining claims would not affect the recovery of fees on these claims. To the extent that the ultimate resolution of the case requires it, any overlap in fees can be deducted from a subsequent award.

The court has reviewed the plaintiff's submissions and finds that the hours expended are reasonable and necessary to this litigation. The court finds, however, based on its familiarity with prevailing rates in this area, that the rate of $250 an hour is a reasonable rate for complex litigation in Dakota County, Nebraska, and in this community. In view of the time expended, the results obtained, the skill necessary to perform the legal services properly, the customary fee for such services, and the experience, reputation, and ability of the attorneys, the court finds that an award of $22,000, representing 88 hours of work performed at $250 per hour is reasonable. Accordingly,

IT IS ORDERED:

1. Plaintiff's motion for attorney fees (Filing No. 72) is granted;

2. Defendant's motion to strike (Filing No. 79) is denied;

3. Plaintiffs' objection (Filing No. 81) is denied as moot;

4. A judgment in conformity with this Memorandum and Order will issue this date.

DATED this 10th day of November, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Court Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

8