**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **CHARVETTE WILLIAMS,** | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CV201 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **RODNEY HERRON and** | ) | |
| **COUNTY OF DAKOTA, NEBRASKA,** | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendants' Motion for Protective Order (Filing No. 88) to preclude disclosure of the so-called Spencer Fane Report based on privilege and confidentiality concerns. The defendants filed a brief (Filing No. 90) and an index of evidence (Filing No. 89) in support of the motion. The plaintiff filed a brief (Filing No. 106)[1] in opposition to the motion. The defendants filed a brief (Filing No. 113) and an index of evidence (Filing No. 114) in reply. After a telephone conference with counsel for the parties on January 7, 2011, the defendants submitted the disputed documents to the court for *in camera* review.

**BACKGROUND**

This case arises from the plaintiff's employment with Dakota County, Nebraska, as a Correctional Officer. The plaintiff originally filed suit on June 12, 2009, in the District Court for Dakota County, Nebraska. **See** Filing No. 1 - Ex. A Complaint. On June 19, 2009, the defendants removed the case to this court. **See** Filing No. 1 - Notice of Removal. On March 3, 2010, the court granted the defendants' motion to dismiss, in part. **See** Filing No. 56. On March 17, 2010, the plaintiff filed her Second Amended Complaint. **See** Filing No. 59.

---

[1] In the brief, the plaintiff references and relies entirely on a brief filed in ***Crutcher-Sanchez v. County of Dakota, Nebraska***, Case No. 8:09CV288, at Filing No. 94, with evidence attached (Filing No. 94-1) regarding the same issues raised in this motion.

The allegations contained in the plaintiff's Second Amended Complaint are summarized as follows. The plaintiff, an African-American female, began working as a Correctional Officer for the Dakota County Sheriff's Office on January 28, 2007. The plaintiff had a sexual relationship with the defendant Rodney Herron (Herron), Chief Deputy for Dakota County, beginning in approximately April 2008. In May 2008, the plaintiff discovered "several white male employees with less experience than her were hired and paid at a higher rate of pay." **See** Filing No. 59 - Second Amended Complaint ¶ 21. In July 2008, the plaintiff complained about the disparity. The plaintiff ended the sexual relationship with Herron in August 2008. In September 2008, the plaintiff refused an offer for a raise in pay contingent on her waiver of the right to back-pay and agreement not to seek legal counsel. In November 2008, Herron attempted to reestablish the sexual relationship with the plaintiff, but she refused.

Based on these allegations, the plaintiff asserted claims for gender and race discrimination, in violation of 42 U.S.C. § 2000e (Count I); equal protection violations based on a hostile work environment (Counts II and III); and a violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1) (Count IV). **See** Filing No. 59 - Second Amended Complaint. On July 16, 2010, the defendants filed their Offer of Judgment Pursuant to Fed. R. Civ. P. 68, with respect to the plaintiff's claims asserted under the Equal Pay Act. **See** Filing No. 69. The plaintiff accepted the offer. **See** Filing No. 70. The parties disputed the attorney fees associated with the relevant claim, which dispute the court resolved. **See** Filing Nos. 71, 91 and 97. On January 6, 2011, the defendants filed an appeal of the court's orders and judgment regarding awards of attorney fees related to the equal pay claim. **See** Filing No. 117. The remainder of the case is to proceed to trial. **See** Filing No. 105. Trial is scheduled for October 17, 2011. **See** Filing No. 120.

On October 6, 2010, the plaintiff requested production of documents related to "any investigations made by the Defendants regarding the circumstances surrounding the Complaint filed against the Defendants and conclusions drawn therefrom. . . .[including] all investigative materials created or generated by Spencer, Fane, Britt & Browne." **See**

Filing No. 89 - Ex. K Request for Production No. 5.[2]  In addition, the plaintiff's Second Amended Complaint references the Spencer Fane Report by noting Herron began a relationship with the plaintiff, a subordinate employee, "despite the fact than [sic] an investigation had been conducted by Spencer, Fane, Britt & Browne in the Summer of 2007 regarding Herron's improper [conduct with other female employees]."  **See** Filing No. 59 - Second Amended Complaint ¶ 11.  The record shows the Spencer Fane Report comprises the investigation materials and an attorney's conclusions about the work environment at Dakota County's correctional facility.

Dakota County's Board of Commissioners hired the law firm of Spencer, Fane, Britt & Browne to conduct an investigation after a meeting held on January 16, 2007.  During the meeting, the commissioners went into an executive session to "discuss possible litigation" based on a complaint about favoritism one commissioner received from Richard Criss (Criss), a male jailer at the correctional facility.  Sheriff James L. Wagner, an elected official, had complete authority over the correctional facility and did not report to the Commissioners.  However, based on the complaint, another commissioner called Dakota County's insurance carrier for advice.  The insurance carrier's representative advised the commissioner to hire a law firm to investigate.  Dakota County's sexual harassment policy, at the time, required Dakota County to investigate all complaints made pursuant to the policy.

As part of the Spencer Fane investigation, Criss and Alana Crutcher-Sanchez (Crutcher-Sanchez), who had retained legal counsel, were interviewed in January 2007.  Crutcher-Sanchez alleged she was subject to a racially and sexually hostile work environment and received a termination letter on January 18, 2007, shortly after the end of her sexual relationship with Herron.  On April 9, 2007, the commissioners decided to allow the investigation to continue.  The later investigation involved interviews of Sheriff Wagner, Herron, and seven other employees of the correctional facility.  On June 4, 2007, the commissioners formally designated County Attorney Edward Matney (Matney) as the sole county official to receive any report from Spencer Fane.  On July 30, 2007, Matney

---

[2] The court notes the plaintiff failed to file a certificate of service with the court as required by NECivR 34.1(b).

informed the commissioners that he had forwarded the (unopened) Spencer Fane Report to Attorney General Jon Bruning's office for a determination about whether criminal charges were warranted. In a July 30, 2007, letter a member of Bruning's office stated he had received and reviewed the Spencer Fane Report, but the allegations did not appear to rise to the level of a criminal matter. Matney returned the Spencer Fane Report to Spencer Fane and did not provide it to the commissioners.

On November 3, 2010, the defendants filed their motion for a protective order. **See** Filing No. 88. The defendants argue the Spencer Fane Report and any matters associated with the internal investigation by defense counsel were prepared in anticipation of litigation and constitute attorney work-product or privileged material under the attorney-client privilege or as self-critical analysis. *Id.* In addition, the defendants argue the Spencer Fane Report is protected as confidential by public policy under Neb. Rev. Stat. § 84-712.05(4) and (5). *Id.* In any event, the defendants argue the Spencer Fane Report is not relevant to the plaintiff's claims. **See** Filing No. 113 - Reply p. 1-2. Further, the defendants contend no waiver of any privilege has occurred because the investigation was kept confidential and, although the defendants pleaded the ***Ellerth-Faragher*** defense in their Answer, there is no indication the defendants intend to rely on the Spencer-Fane Report as part of their defense in this case. *Id.* at 15-16; **see also** Filing No. 62 - Answer ¶ 51.

## ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents . . ." Fed. R. Civ. P. 26(b)(1). However, "[t]he District Court does have discretion to limit the scope of discovery." ***Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998)**. A party may move for an order protecting disclosure or discovery, which is granted only upon a showing of good cause. **See** Fed. R. Civ. P. 26(c). The party moving for the protective order has the burden to demonstrate good cause for issuance of the order. ***Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999)**. A person opposing production of documents based on privilege or seeking protection for documents

that fall under the attorney-client privilege has the burden of establishing the privilege applies. See Fed. R. Civ. P. 26(b)(5); Fed. R. Civ. P. 45(d)(2)(A). Similarly, a person opposing production bears the burden of establishing a waiver, by disclosure or otherwise, did not occur. See *United States v. Hatcher*, 323 F.3d 666, 675 (8th Cir. 2003) (Bye, J., concurring).

As a general rule, "[t]he attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Because they reduce the amount of information discoverable during the course of a lawsuit, the attorney-client privilege and, to an even greater extent, the attorney work-product doctrine are narrowly construed. See *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005); *In re Grand Jury Subpoenas*, 454 F.3d 511, 520 (6th Cir. 2006). Federal Rule of Evidence 501 provides that privileges in federal-question cases generally are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501; **see** *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994).

> The attorney-client privilege encourages full and frank communication between attorneys and their clients so that clients may obtain complete and accurate legal advice. But the privilege protecting attorney-client communications does not outweigh society's interest in full disclosure when legal advice is sought for the purpose of furthering the client's on-going or future wrongdoing.

*In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 641 (8th Cir. 2001).

Additionally, "[t]he attorney-client privilege is strongest where a client seeks counsel's advice to determine the legality of conduct before taking action." *Id.* (**citing** *Upjohn*, 449 U.S. at 392). However, communications between attorney and client are not *per se* privileged.

The Supreme Court in *Upjohn* determined the communications of an employee of a corporation with the corporation's counsel made in order to secure legal advice

5

concerning matters within the scope of the employee's corporate duties, consistent with the underlying purposes of the attorney-client privilege, are protected from disclosure. *Upjohn*, 449 U.S. at 394-95. Such protection has been extended to independent consultants or contractors who are the functional equivalent of an employee. **See, e.g.,** *In re Bieter*, 16 F.3d at 938. At the same time, the privilege belongs to the client organization. *Ross*, 423 F.3d at 603-04; *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996). "[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985).

The party asserting a privilege to prevent disclosure of information bears the burden of establishing the privilege. *United States v. Hatcher*, 323 F.3d 666, 675 (8th Cir. 2003); *Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997) (holding party "met its burden of providing a factual basis for asserting the privileges when it produced a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its general counsel"). Accordingly, the defendants must show all five of the following requirements are met.

> [T]he attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Diversified Indus., Inc.*, 572 F.2d 596, 609 (8th Cir. 1977) (en banc).

In addition to the attorney-client privilege, the defendants may shield information from discovery if it is subject to the attorney work-product doctrine. "The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Sandra T.E.*, 600 F.3d at 618. The work-product doctrine was established by *Hickman v. Taylor*, 329 U.S. 495 (1947), and is now codified in Fed. R. Civ. P. 26(b)(3)(A): "Ordinarily, a party may not discover

documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." However, under certain circumstances, such materials may be discoverable if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). In any event, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).[3]

With regard to claiming privilege or protection of trial-preparation materials, Rule 26 provides:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5).

---

[3] The doctrine was designed to prevent "'unwarranted inquiries into the files and mental impressions of an attorney'" and "recognizes that it is 'essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987) (**quoting** *Hickman v. Taylor*, 329 U.S. 495 (1947)).

There are two types of protected work product. "Ordinary" work product is subject to production only upon a showing of substantial need and inability to secure the substantial equivalent without undue hardship. *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988). . . . **See** *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1328 (8th Cir. 1986); *In re Murphy*, 560 F.2d at 336; (Dec. 22, 1993 Order at 4.) "Opinion" work product includes documents that contain the mental impressions, conclusions or opinions of an attorney and is discoverable only in "rare and extraordinary circumstances." *In re Chrysler Motors Corp.*, 860 F.2d at 846; *Simon*, 816 F.2d at 402 n. 3 (**quoting** *In re Murphy*, 560 F.2d 326, 336 n. 20 (8th Cir. 1977)). Opinion work product is virtually absolutely immune from discovery. *In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir. 1973).
*Bieter Co. v. Blomquist*, 156 F.R.D. 173, 179 (D. Minn. 1994).

7

As relevant here, "[w]ork-product protection applies to attorney-led investigations when the documents at issue can fairly be said to have been prepared or obtained because of the prospect of litigation." *Sandra T.E.*, 600 F.3d at 622 (internal quotation marks and citation omitted). Work-product protected documents are only those documents prepared under the prospect of litigation. *Id.* Accordingly, "precautionary documents," for example those documents "developed in the ordinary course of business" or for the "remote prospect of litigation" are not subject to protection. *Id.* The defendants must show the disputed documents were "prepared because 'some articulable claim, *likely* to lead to litigation, [has] arisen.'" *Id.* (citation marks omitted).

The plaintiff seeks two categories of documents within the Spencer Fane Report. **See** Filing No. 94, in 8:09CV288 - Response p. 10. The first category contains communications between Spencer Fane and the County regarding the 2007 investigation. The second category is the transcripts of interviews conducted by Spencer Fane as part of the 2007 investigation. The court will address each category seriatim.

**1.     Communications Between Spencer Fane and Dakota County**

The plaintiff seeks three documents listed on the defendants' privilege log that appear to be communications between Spencer Fane and Dakota County in connection with the investigation of the work environment at Dakota County's correctional facility. **See** Filing No. 94, in 8:09CV288 - Response p. 10. The documents are (1) an undated letter of engagement; (2) a July 23, 2007, Report/memorandum with cover letter to Matney; and (3) an August 21, 2007, letter to Matney. **See** Filing No. 89 - Ex. 1 - Privilege Log p. 2 Nos. 1, 13, and 15. Specifically, the letter of engagement is a letter dated February 16, 2007, with Spencer Fane's "Standard Terms of Engagement" form sent from Mark McQueen, an attorney at Spencer Fane, addressed to the Dakota County Board of Commissioners and naming Betty O'Neill, a commissioner. The July 23, 2007, Report/memorandum is a document summarizing Spencer Fane's investigation and providing conclusions about the informal complaints made about the working environment of the correctional facility. The July 23, 2007, document includes a letter dated July 23, 2007, written by Kelly K. Brandon, an attorney at Spencer Fane, and addressed to Matney. The document also includes a

8

Memorandum dated July 12, 2007, from Kelly K. Brandon to Mark E. McQueen. The August 21, 2007, letter was written by Mark E. McQueen and addressed to Matney. The August 21, 2007, letter provides additional recommendations to the commissioners related to the investigation.

The plaintiff argues the correspondence is not protected by the attorney-client privilege because the defendants fail to establish the Commissioners retained Spencer Fane to provide "an opinion of law," "legal services," or "assistance in some legal proceeding." **See** Filing No. 94, in 8:09CV288 - Response p. 10. The plaintiff contends the law firm was retained merely to conduct an internal investigation of workplace misconduct, rather than as a legal advisor. *Id.* at 11. The plaintiff maintains the commissioners did not retain Spencer Fane in response to any pending or threatened litigation. *Id.* The plaintiff asserts that if Spencer Fane was retained to provide legal advice, then production of the letter of engagement may resolve the dispute. *Id.* at 12.

One issue before the court is whether these communications were made for the purpose of seeking legal advice. **See** *Diversified*, 572 F.2d at 609. Under such analysis, "when a matter is committed to a professional legal advisor, it is 'prima facie committed for the sake of legal advice and [is], therefore, within the privilege absent a clear showing to the contrary.'" *In re Bieter*, 16 F.3d at 938 (**quoting** *Diversified*, 572 F.2d at 610).

The communications at issue were all from legal counsel to Dakota County. There was a direct attorney-client relationship between Spencer Fane and Dakota County, as evidenced by their conduct and the letter of engagement. The communications contain information Spencer Fane received from the commissioners regarding the scope of the attorney-client relationship. The subject matter of the correspondence is the investigation of conduct at the correctional facility.

The court cannot assume Spencer Fane's investigative work was not work acting as an attorney for purposes of privilege. **See** *Sandra T.E.*, 600 F.3d at 618-19. "[F]actual investigations performed by attorneys as attorneys fall comfortably within the protection of the attorney-client privilege." *Id.* at 619 (**citing** *Upjohn*, 449 U.S. at 401). The court finds the defendants have presented evidence that the investigation was committed to Spencer Fane, a professional legal advisor, for legal advice. The fact that some of the employee

9

complaints may provide evidence of work misconduct, does not diminish the seriousness of the allegations or the threat of litigation for Dakota County. Spencer Fane employed attorneys to use their legal expertise to conduct the investigation, including interviews. These attorneys used their expertise and judgment during the process to gather relevant information and form opinions to advise their client. Accordingly, the defendants have met their burden of showing such documents are subject to the privilege. Further, the plaintiff has failed to make a clear showing disputing the defendants' claim such documents were prepared in response to a request for legal advice. In any event, the court has reviewed the documents at issue and finds the attorney-client privilege is applicable and appropriate under the circumstances. The court need not require production of privileged materials, including the letter of engagement, in order to enable the plaintiff to make an independent determination of the appropriateness of the privilege.

The correspondence is also subject to work-product protection. The plaintiff argues the commissioners undertook the investigation, not in response to an actual threat of litigation, but for the purpose of making business decisions for future conduct. **See** Filing No. 94, in 8:09CV288 - Response p. 13-14. The plaintiff highlights evidence indicating the commissioners thought litigation was "possible," although no litigation had been threatened or initiated at the time, and the defendants characterize the investigation as "an investigation into complaints of possible misconduct by Dakota County employees." *Id.* at 14. The defendants provide evidence from commissioners who state they were concerned about litigation and potential liability in terms of civil and criminal violations. **See** Filing No. 113 - Reply p. 11-12. Other evidence presented supports the commissioners' affidavits. The commissioners convened a closed-door session and contacted their insurance carrier and legal counsel shortly after hearing about the complaints from Criss and Crutcher-Sanchez, who had already engaged her own legal counsel. Further, the defendants suggest the commissioners' conduct was a deviation from the normal course of business. *Id.* at 13. Although no lawsuits had been filed at the time, both Criss and Crutcher-Sanchez later filed suit, which underscores the reasonableness of the commissioners' belief litigation was likely. Under these circumstances, the court finds the defendants have met their burden of showing the relevant documents were prepared based on an articulable claim, likely to lead to litigation. Further, upon review of the documents, the

court finds the correspondence is subject to the work-product doctrine. These documents appear to be prepared by counsel for the defendants in anticipation of litigation and contain the mental impressions, conclusions or opinions of counsel regarding such litigation. The plaintiff does not argue a substantial need for the documents may outweigh the protection and require disclosure.

For the reasons stated above, the court concludes the communications between Spencer Fane and Dakota County including (1) the letter of engagement; (2) the July 23, 2007, Report/memorandum with cover letter address to Matney; and (3) the August 21, 2007, letter address to Matney, are protected materials under the attorney-client privilege and the work-product doctrine. The court further finds no waiver of privilege for these documents occurred with respect to how the documents were handled. The court will address the waiver issue as it applies to the ***Ellerth-Faragher*** defense below.

**2.     Interviews**

The plaintiff seeks the transcripts of the interviews conducted as part of the Spencer Fane investigation. **See** Filing No. 94, in 8:09CV288 - Response p. 10. The plaintiff argues these interviews cannot be considered privileged under the attorney-client privilege because the interviews were not for the purpose of seeking legal advice and because the interviewees were not clients. *Id.* at 12. This is particularly apparent, according to the plaintiff, because some of the interviewees had retained other counsel. *Id.*

The defendant argues the interviews conducted by Spencer Fane were for the purpose of providing legal advice. **See** Filing No. 113 - Reply p. 10. The Board of Commissioners encouraged employees and others to submit to interviews about the work environment. *Id.* The interviews were kept confidential. Under these circumstances, the defendant argues the interviews were communications between an attorney and client. *Id.*

The court addressed the attorney-client privilege and work-product protection above and finds those doctrines also shield the interview transcripts from production. However, the court will examine the parties' arguments about whether the interviewees can be considered clients in greater detail. Typically, "[t]he attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney,

acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E.*, 600 F.3d at 618. Protection extends to independent consultants or contractors who are the functional equivalent of an employee. *In re Bieter*, 16 F.3d at 938.

> [A]n employee of a corporation, . . . is sufficiently identified with the corporation so that his communication to the corporation's lawyer is privileged where the employee made the communication at the direction of his superiors and where the subject matter upon which the lawyer's advice was sought by the corporation and dealt with in the communication was within the performance by the employee of the duties of his employment.

*Diversified*, 572 F.2d at 602.

During the investigation, Spencer Fane interviewed several employees of the correctional facility and representatives of Dakota County. These interviewees need not be within the County's "control group" as suggested by the plaintiff. The evidence shows the interviewees were "precisely the sort of person[s] with whom a lawyer would wish to confer confidentially in order to understand [Dakota County's] reasons for seeking representation." *In re Bieter*, 16 F.3d at 938. The interviews were confidential in nature, the commissioners asked the employees to participate, the employees had unique information about their employment environment, and the interviews were directly related to the purpose of Spencer Fane's representation of Dakota county. Accordingly, the court finds the interviews are protected by the attorney-client privilege. The fact that a third-party or other legal counsel may have been present for some of the interviews does not change the analysis with respect to interviews meant to be kept confidential.

In any event, the attorney-client privilege does not provide the only protection for the interviews. In *Sandra T.E.*, the court noted:

> the attorney-client privilege applies to statements made by witnesses regardless of whether they were currently employed by the [defendant] at the time they were interviewed. . . . [T]he distinction between present and former employees is irrelevant for purposes of the attorney-client privilege. . . . [Moreover,] the work-product doctrine would protect any notes from interviews with former employees as equally as it protects notes from interviews with third parties who never worked for the [party].

*Sandra T.E.*, 600 F.3d at 618 (alterations added) (internal citations omitted).

12

As discussed above, the court finds the interviews were conducted by counsel for Dakota County in anticipation of litigation and contain the mental impressions, conclusions or opinions of counsel regarding such litigation. The identity of the interviewees does not change the analysis.

Aside from the privilege issues, the plaintiff fails to show how the interview transcripts are relevant to her lawsuit. The investigation began about the same time the plaintiff began her employment with Dakota County. The plaintiff was not interviewed. The interviews do not involve the plaintiff or her claims. The fact the plaintiff may know the interviewees or shared some experience with them does not justify production. The plaintiff is at liberty to conduct other relevant discovery not inconsistent with this order.

### 3.  Waiver:  *Ellerth-Faragher* Defense

The attorney-client privilege and work-production doctrine protection may be waived. **See** *United States v. Nobles*, 422 U.S. 225, 239 (1975); **see also** *Baker*, 209 F.3d at 1055 (applying state law) ("A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication at issue."); *In re Chrysler Motors Corp. Overnight Evaluation*, 860 F.2d 844 (8th Cir. 1988). The Eighth Circuit

> has recognized that the [work-product doctrine] should be applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis. The privilege is designed to balance the needs of the adversary system to promote an attorney's preparation in representing a client against society's interest in revealing all true and material facts relevant to the resolution of a dispute.

*Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002) (alteration added) (internal quotation omitted) (**citing** *Hickman*, 329 U.S. at 510-11; *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997)).

> [I]n certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted. The loss of the privilege in these circumstances is sometimes described as *implied waiver*, sometimes as *"at issue" waiver* because it results from the party having placed a contention at issue.

13

*John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) (**citing** *United States v. Nobles*, 422 U.S. 225 (1975) (other citations omitted)); **see also** *Baker v. General Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000).

The plaintiff contends the court should find implied waiver of any privilege with regard to the Spencer Fane Report's interviews and memorandum. The plaintiff argues the defendants placed the subject documents at issue when the defendants affirmatively allege "that the *Ellerth/Faragher* defense to vicarious liability applies in this case to reduce or bar damages." **See** Filing No. 94, in 8:09CV288 - Response p. 15-19 (**quoting** Filing No. 62 - Answer ¶ 51). Additionally, the defendants allege the plaintiff "was not subject to any tangible employment action" and Dakota County "exercised reasonable care to prevent and promptly correct any sexual harassment behavior, and that the Plaintiff unreasonably failed to take advantage of preventative and corrective opportunities provided by her employer to avoid harm." Filing No. 62 - Answer ¶¶ 52-53. The plaintiff asserts these defenses are based on the defenses recognized in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

> The *Ellerth-Faragher* affirmative defense consists of two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior[ ] and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

*Fuller v. Fiber Glass Systems, LP*, 618 F.3d 858, 864 (8th Cir. 2010) (alteration in original).

The plaintiff argues these affirmative defenses presumably rely on Dakota County's hiring of Spencer Fane to conduct an investigation about "this and its companion lawsuits." **See** Filing No. 94, in 8:09CV288 - Response p. 17. The plaintiff relies on a brief and statements made by the defendants in a related case filed by another correctional facility employee, Toni Duncan. *Id.* at 18. In that case, according to the plaintiff, the defendants argue the alleged sexual harassment was not severe or pervasive enough to create a hostile work environment. *Id.* Additionally, the defendants, in the *Duncan* case specifically mention hiring "an outside law firm to conduct an internal investigation into any possible

14

misconduct." *Id.* (**quoting** the defendants' summary judgment brief p. 22-23 Filing No. 51 in *Duncan v. County of Dakota, et al.*, Case No. 8:09CV277).

The defendants assert they have not waived protection for the subject documents because they do not rely on the Spencer Fane Report in this case. See Filing No. 113 - Reply p. 15-17. The defendants argue the materials protected by the work-product doctrine are not subject to the waiver in connection with the *Ellerth/Faragher* defense. *Id.* at 15. Additionally, the defendants state they have not yet determined whether they will rely on any of the Spencer Fane Report materials for their defense in this case. *Id.* The defendants deny they waived privileges in the *Duncan* matter particularly because Ms. Duncan did not participate in the investigation and counsel in the *Duncan* case carefully drafted the summary judgment materials to avoid references to privileged materials. *Id.* at 16. Moreover, the defendants note the plaintiff here did not participate in the investigation. *Id.* However, the defendants admit that the investigation happened and certain actions taken as a result of the investigation may be relevant to this matter.

It does not appear the defendants rely on the adequacy of the investigation as an affirmative defense. See *McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 243-44 (E.D.N.Y. 2001) (holding privileges as to investigation waived when sufficiency or adequacy of investigation placed at issue by the defendant). Under the circumstance, the court does not find an implied waiver based on the defendants' affirmative defenses in this matter. The defendants did not waive privilege to the subject documents by generally alleging they may rely on the *Ellerth/Faragher* defense to vicarious liability and that they exercised reasonable care to prevent and correct promptly any alleged sexually harassing behavior. The court finds that, on balance, fundamental fairness does not require disclosure of the subject documents. The plaintiff has full and fair access to the true and material facts at issue and the subject documents would not further reveal otherwise unattainable relevant material facts. Accordingly, at this time the plaintiff is not entitled to production of the documents at issue on the basis of any waiver implied in the assertion of the defendants' affirmative defenses. Upon consideration,

**IT IS ORDERED:**

1. The defendants' Motion for Protective Order (Filing No. 88) is granted.

2. The Clerk of Court shall maintain the Spencer Fane Report documents as Sealed Exhibit A to this Order with a text only entry. The original Sealed Exhibit A shall be maintained in the Clerk's Office without attaching an electronic version to the Order. The Sealed Exhibit A may be returned to counsel for Dakota County at the conclusion of these proceedings in accordance with Court procedures.

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 8th day of February, 2011.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.